No. 18,488.

WILLIAM J. ESTES, *Appellee*, v. EDGAR ZINC COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Conveyor Belt in Elevator—Findings Do Not Sustain Verdict.* In an action to recover for injuries alleged to have been received because a certain conveyor belt, being out of gear, started in gear and in motion without human agency, the jury, in answer to a special question whether such belt got into gear automatically, answered: "No evidence to show how it got back." *Held,* that a general verdict for the plaintiff should have been set aside.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed December 6, 1913. Reversed.

*O. P. Ergenbright,* of Independence, for the appellant.

*Chester Stevens,* of Independence, and *Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff recovered a judgment for injuries received while working at an elevator box in the defendant's plant. The building was four stories high, and the power running the conveyor belt came from a horizontal shaft on the fourth floor which was so arranged that when the belt of the conveyor worked upon a pulley which revolved with the shaft the power was thereby transmitted, and in order to throw the belt out of gear it was necessary for a workman on the first floor to pull a rope reaching down from the fourth floor, the effect of which was to change the belt over to a loose pulley not revolving with the shaft. To put the belt in gear another rope was provided, by which the belt could be drawn back so as to run over the fixed pulley. The petition alleged, among other

things, that the apparatus for starting and stopping the conveyor belt was defective in that it would start in motion after having been thrown out of gear "without any one having pulled the rope provided for that purpose, by reason of some defect in the machinery for throwing and keeping said belt out of gear"; that it was the plaintiff's duty when the conveyor belt became choked to throw the belt out of gear and clean out the elevator box; that in attempting so to do he pulled the rope in the usual and proper way, and went to the elevator box and proceeded to remove with his hand the accumulated obstructions therein, and while so engaged, without any warning the belt started up, pulling the plaintiff's hand forward and crushing it. The answer was a general denial and plea of contributory negligence and assumption of risk. The instructions were brief and clear, and are not attacked by either party. The jury were told that if the plaintiff knew, or in the exercise of common and ordinary sense and judgment could have known, that the instant the obstruction was removed the belt would start in motion, then he could not recover; that the plaintiff's claim as to defects was that the conveyor belt "would start in motion without any one having pulled the rope provided for that purpose."

The jury returned a verdict for the plaintiff, and in answer to special questions found that he pulled the rope in the usual and ordinary way for throwing the machinery out of gear before beginning work in the elevator box; that the belt started in motion while he was engaged in cleaning out the box, without notice or warning.

"Q. 14. Did plaintiff throw said drive belt out of gear before descending into said basement? A. Yes. Q. 15. Did said drive belt get into gear automatically after plaintiff went down into said basement? A. No evidence to show how it got back." It was also found that the plaintiff stated to witnesses that he might have

pulled the wrong rope. The other questions were answered favorably to the plaintiff and were consistent with the verdict, with the possible exception of a finding to the effect that the plaintiff was informed or had notice of the dangers and hazards of the place "by observation," and another express finding that he assumed the risks and hazards and perils of the place at which he was injured—which would seem to be a matter rather for the court than for the jury. It was testified by experts that the belt could not automatically change from the loose to the rigid pulley; but other evidence, like a finding of the jury, was to the effect that the drive belt could move from the loose to the tight pulley of its own accord. The defendant moved for judgment on the special findings, which being overruled, a new trial was asked for and denied. The defendant appeals and presses the point that the plaintiff did not testify unqualifiedly that he knew the belt was out of gear before he went to the basement, but a fair interpretation of his answer on direct and cross-examination is that he pulled the proper rope which was provided for the purpose of taking the belt out of gear, and which he assumed would have that effect, having no reason to think otherwise. He did say he had knowledge two weeks before that if he pulled it out of gear it might itself work back into gear. We think the candor of the plaintiff was not only commendable, but that it did not weaken the force of his testimony or make it less convincing than a positive assertion of actual knowledge that the belt was out of gear. It is also emphasized that before a recovery could be had the jury must believe that a defect existed in the mechanism for shifting the belt, by reason whereof the latter would start in motion without any one having pulled the rope provided for that purpose, that is, of its own accord, automatically, and that the answer to question No. 15, "no evidence to show how it got back;" leaves the matter in the situation of basing the verdict

Estes v. Zinc Co.

upon conjecture.   While the use of the word "auto-matic" in the question is criticized by the plaintiff, we think the jury must have rightfully understood it to mean as Webster defines it: "Having an inherent power of action or motion; self-acting or self-regu-lating; not voluntary; not depending on the will; me-chanical." (Webster's New International Dictionary, 1911.)   In other words, we think the jury understood the question and intended by the answer to say that there was no evidence to show whether the belt started in motion mechanically, by reason of some defect in the shifting gear, or by the application of human force. The minus quantity in this finding is represented by that portion of the allegation that the "conveyor belt, . . . by reason of said defect in said machinery hereinbefore set out, started up," etc.   It is impossible to discover in the findings anything which shows that the belt started on account of this defect, and not by reason of the rope being pulled by some one.   The plaintiff testified that after he had pulled the rope and gone below to clean out the box, and had taken out about a bushel of obstructions, he ran his hand in under the belt and found a nail or spike in the cup of the elevator; "so I took my hand and worked that loose, and when I got my obstruction loose, the elevator started and caught my hand."   This may have been one reason why the jury felt unable to state what started the belt in motion.

While the defendant is not entitled to a judgment on the special findings, and while but for the answer to question No. 15 the general verdict might be recon-cilable with the other special findings, the entire con-clusions of the jury leave the case in the condition of having found in favor of the plaintiff while failing to find one of the essential elements of his right to a re-covery.   One ground of a motion for a new trial was that the verdict was contrary to the evidence, and in

the respect indicated this ground was well taken and the motion should have been granted.

It was alleged and found that the defendant had not furnished plaintiff a safe place in which to work, but it is clear that the controlling cause of such unsafety was the tendency of the belt to shift from the loose to the fixed pulley, and in this instance it was necessary to prove that such shifting occurred without human agency. This—the very crux of the matter—the jury failed to determine.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.