No. 20,109.

WILLIAM J. ESTES, revived in the name of LAURA J. ESTES, as Administratrix, etc., *Appellee,* v. THE EDGAR ZINC COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. DEATH OF PLAINTIFF—*Revived in Name of Administratrix—Sufficient Amendment to Petition.* While the action was pending the plaintiff died. The action was revived in the name of his administratrix, who by leave of court filed an amendment to the petition for the purpose of showing her authority to prosecute the action. The amendment stated that the plaintiff died intestate, a resident of a certain county, that by the consideration of the probate court of that county she was duly appointed administratrix of his estate, that she had duly qualified as such administratrix, and that she was the duly qualified and acting administratrix of the plaintiff. *Held,* the amendment was sufficient against an objection to the introduction of evidence.

2. PRACTICE, SUPREME COURT—*Second Review of Case—Issues Determined on First Appeal.* The plaintiff recovered judgment against the defendant. On appeal to this court the judgment was reversed on a

Estes v. Zinc Co.

specific ground and the cause was remanded for a new trial. The plaintiff again recovered and the defendant again appeals. *Held,* the defendant is not entitled as a matter of right to urge defects in the proceedings which might have been presented on the former appeal but which were not, or matters which were presented and decided on the former appeal.

3. SAME. To prevent the possibility of a miscarriage of justice the court has examined all the assignments of error relating to matters which were or which might have been decided on the former appeal and is satisfied that the defendant has not been prejudiced in any of its substantial rights.

4. TRIAL—*Refusal to Submit Special Questions Asked—No Error.* The refusal of the trial court to submit to the jury certain special findings of fact held to be without prejudice in view of other findings of fact which were returned.

Appeal from Montgomery district court; THOMAS J. FLAN-NELLY, judge. Opinion filed April 8, 1916. Affirmed.

*O. P. Ergenbright,* and *T. S. Salathiel,* both of Independence, for the appellant.

*Chester Stevens,* of Independence, and *Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an employee for damages resulting from personal injuries occasioned by the negligence of his employer. The plaintiff recovered. On appeal to this court the judgment was reversed because of a special finding that there was no evidence relating to a material fact, and a new trial was ordered. (*Estes v. Zinc Co.,* 91 Kan. 138, 136 Pac. 910.) Before the second trial the plaintiff died. The action was revived in the name of the plaintiff's administratrix, who prosecuted it to judgment. The defendant was again defeated and again appeals.

The defendant raises the question whether or not the record discloses a proper party plaintiff. The petition was amended by leave of court for the purpose of showing the appointment and qualification of the administratrix in whose name the action had been revived. The amendment reads as follows:

"Comes now Laura J. Estes, widow of William J. Estes, the above named plaintiff and for an amendment to the petition herein, she alleges

that William J. Estes, the above named plaintiff, departed this life intestate on the 25th day of January, 1914, during the pendency of this action; that at the time of his death he was a resident of Montgomery County, Kansas, and that on or about the 14th day of March, 1914, by the consideration of the Probate Court of Montgomery County she was duly appointed Administratrix of his estate, and that she has duly qualified as such Administratrix and is now the duly acting and qualified Administratrix of the estate of William J. Estes, deceased.

"That afterwards, to-wit, on the 14th day of November, 1914, on motion this court duly made an order reviving the above entitled action in her name as Administratrix of the estate of William J. Estes, deceased, and that she desires by this pleading to amend the original petition in this action, and that said action proceed on said petition as amended hereby."

No objection was made to the form of the amendment and no issue was taken upon it. At the beginning of the trial an objection was made to the introduction of evidence under the amended petition for the reason it did not state facts sufficient to constitute a cause of action in favor of the plaintiff. It is said that the amendment did not present in issuable form the facts from which the legal conclusion of due appointment and qualification might be deduced. The cases of *City of Atchison v. Twine*, 9 Kan. 350, and *C. B. U. P. Rld. Co. v. Andrews, Adm'r*, 34 Kan. 563, 9 Pac. 213, are cited. In those cases no amendment whatever was made to the petition. It does not take much of a pleading to be good against an objection to the introduction of evidence. Conclusions which apprise the opposite party of what is claimed are sufficient against such an objection, and, indeed, conclusions of that kind are sufficient against a formal demurrer when no motion to make definite and certain has been interposed. Besides this, as the court has remarked on numerous occasions, the important thing is not whether the technical requirements of the old artificial system of framing sharp issues has been complied with, but whether the plaintiff has stated what he claims in such a way that the defendant may know what he has to meet. It was important that the defendant should not be compelled to pay damages due to William J. Estes in his lifetime to some one not authorized to receive them, or to defend an action which might lead to that result. When Laura J. Estes came in and stated that while the action was pending William J. Estes died intestate, a resident of Montgomery county, that by the consid-

eration of the probate court of Montgomery county she was duly appointed administratrix of his estate, that she had duly qualified as such administratrix and was acting in that capacity, and that she desired the action to proceed on the original petition amended by her statement, she came very near to stating all that good pleading required. The defendant was quite as fully advised of the nature of her claim as if she had pleaded her letters of administration, the taking of her oath, and the giving of her bond and its approval, all matters of record which she was not required to exemplify. The defendant could not sit by until the trial was on and then say it was confronted by nothing at all. Furthermore, before the plaintiff's case was closed the records and documents were produced in evidence, which established the right of the administratrix to prosecute the action. Their authenticity and probative force were not contested, and no claim is now made that the administratrix did not in fact have capacity to prosecute the action. Objection was made to the proof but the defendant did not undertake to meet it in any way. There is not now and there never has been any doubt whatever that Laura J. Estes in her representative capacity was the proper party and had the right to go on with the litigation, and if the amendment to the petition were to be regarded as materially defective this court would now treat the petition as properly amended to conform to the proof.

The material facts of the case were sufficiently stated in the former opinion. Perhaps there should be added to the former statement the fact that the gear shifting device was located on the third floor of the building and that the line shaft was on the second floor. The evidence given by the deceased plaintiff at the former trial was read to the jury, and all the important and controlling evidence on behalf of the plaintiff at the second trial was substantially the same as at the first trial, with this addition: a witness not previously produced told of an instance when the machinery started apparently of its own accord, and testified that after the plaintiff was injured the line shaft was found to be four inches lower at one end than at the other, which would make one side of the belt tighter than the other and would cause the belt to run to the tight side. The defend-

ant introduced no evidence and the same instructions were given the jury as before.

The defendant assigns as error the overruling of a motion to make the original petition more definite and certain and the overruling of a demurrer to the original petition. The defendant further assigns as error the admission of certain evidence which was admitted at the first trial, and under an assignment that the court erred in overruling a demurrer to the evidence discusses the effect of evidence which was given at the first trial. The defendant is not entitled, as a matter of right, to be heard upon these assignments of error. On the former appeal the sufficiency of the petition was not challenged and the action of the court in admitting the evidence objected to was not challenged. It was argued that the plaintiff assumed the risk of his injury and that the evidence was insufficient to sustain a verdict in his favor. Defects in the proceedings which might have been presented on the former appeal, but which were not, were waived, and matters which were presented and which were decided against the defendant were concluded by the former judgment of this court which set aside the verdict because of a single fact, the special finding referred to.

"Whatever therefore, was at that time decided, is not now a matter for reëxamination. Nor is this limited to the mere questions noticed in the opinion, nor indeed to the actual matters presented by the respective counsel, and considered by the court. . . . A party may not settle the law of his case by piecemeal before this court, any more than he may settle the facts in that way before the district court." (*Headley v. Challiss*, 15 Kan. 602, 606, 607.)

This is the prevailing rule governing appellate practice. (3 Cyc. 398.) Simetimes, however, something of vital importance may have been overlooked on a former appeal which it would be wrong to ignore on a second appeal through slavish adherence to rule. Likewise it may be clear that the court made a serious mistake in its former decision and that greater injustice would result from it than would result from nonadherence to a salutary rule. Other grounds may exist for recognizing an exception to the general rule. (*Lorimer v. Fairchild*, 68 Kan. 328, 75 Pac. 124.) This being true, the court has investigated the assignments of error far enough to satisfy

itself that the defendant has not been seriously prejudiced in any of its substantial rights.

The petition stated a cause of action the nature of which, if not clearly understood before, was made very plain at the former trial. The evidence relating to the construction of the north elevator illustrated the defective construction of the south elevator boot. The letter objected to did not determine the answers to special questions which established liability, and the verdict was not excessive. The plaintiff testified that he pulled the machinery out of gear and, as the former opinion stated:

"We think the candor of the plaintiff was not only commendable, but that it did not weaken the force of his testimony or make it less convincing than a positive assertion of actual knowledge that the belt was out of gear." (91 Kan. 140.)

The plaintiff's statement that after he removed the obstructing ore "it did not go" did not completely destroy the force of his testimony that he pulled the machinery out of gear and his testimony indicating the belt would have burned out if the machinery had been in gear during the time he was cleaning out the boot. There was abundant evidence that the belt would shift of its own accord from the loose to the fixed pulley and thus unexpectedly start the machinery in motion. A sufficient explanation of this fact was found in the improper alignment of the power shaft, and the jury did not go contrary to the testimony of the expert witness, Mishner, in finding that the machinery got in gear because of "defective line shaft." In shifting the belt, force applied on the first floor of the building operated a device on the third floor which accomplished the desired result on the fourth floor, and the plaintiff was not obliged to confine either allegation or proof that the machinery was defective because it would go in gear automatically to any specific floor. Because the machinery would go in gear of its own accord, and because of the construction of the boot, the plaintiff did not have a safe place to do the work of taking out ore when the elevator clogged. On an occasion some three weeks before the plaintiff was injured he was working at the north crusher. He saw that the elevator of the south crusher (the one which injured him) had stopped and he pulled the rope to throw it out of gear to prevent the

belt from burning. Some time afterwards the defendant's machinist came to him, said the belt was burning, and asked the plaintiff why he had not thrown it out of gear. The plaintiff replied he had done so. At that time he could smell the burning belt. He did not know certainly whether he had succeeded in throwing it out of gear or whether it had worked back in gear. The fact that the plaintiff acquired this knowledge in this way of a single instance of irregular action on the part of the machinery did not establish the defense of assumed risk as a matter of law.

The defendant's request that the following questions be submitted to the jury was denied:

"Was it a rule of Edgar Zinc Company, defendant, that no employee should go down into the basement to unchoke the elevator boot without first knowing that the drive belt was out of gear?

"When William J. Estes went down into the basement to unchoke the elevator on the morning that he was injured, did he know that the drive belt was out of gear?

"Is it not a fact that William J. Estes could have determined with certainty whether or not the drive belt was out of gear before he went down into the basement?"

In a whip-sawing examination of the plaintiff he said he did not know whether or not he had thrown the machinery out of gear before commencing work in the elevator boot, but he demonstrated by other statements that he had all the assurance that he had done so which reasonable prudence required, considering the character of the belt-shifting apparatus which has been described. The word "know" had two meanings—possession of absolute knowledge, which was immaterial, and full assurance to the exclusion of doubt on the part of a reasonably careful person, which was material. Because of this fact the jury might have been confused by the questions. Any answers the jury might have returned would have allowed continued play upon the two significations. It made no material difference how the questions might be answered if the plaintiff, by employing the usual means in the usual way, threw the machinery out of gear. These subjects were sufficiently covered by the following special findings which were returned:

"Did William J. Estes try to throw the drive belt out of gear before he entered the basement? A. Yes.

"Was not pulling the rope, the end to be pulled being on the first floor,

the method which the defendant provided for the purpose of throwing the said elevator belt out of gear? A. Yes.

"State whether or not you find that said Estes pulled the rope in the usual and ordinary way for throwing machinery out of gear prior to commencing work in the elevator boot, where he was injured? A. Yes.

"Was the drive belt out of gear when William J. Estes entered the basement? A. Yes."

The defendant requested that the following question be submitted to the jury: "Do you find defendant to have been negligent; if so state in what respect it was negligent?" The court struck out the latter part of the question and submitted the first part, which was answered in the affirmative. The defendant was entitled to know in what respect the jury considered it to be negligent if it were found to be negligent, but no prejudice resulted from the court's action because the jury found the defendant was negligent in the very particulars alleged in the petition, and specified the cause of the machinery going in gear of its own accord, as appears by the following special findings:

"Do you find that the defendant Zinc Company furnished to William J. Estes a safe place to do the work at which he was engaged at the time of his injury? A. No.

"Was the failure of the defendant to furnish Estes with safe machinery with which to do the work, the proximate cause of his injury? A. Yes.

"Do you find that the elevator went into gear after Estes went down into the basement to unchoke the elevator boot? A. Yes.

"Do you find that the elevator belt started in motion while plaintiff was engaged in cleaning out the elevator boot, and without notice or warning to the said Estes? A. Yes.

"Is there any evidence before you to show that the drive belt changed of its own motion from out of gear into gear while William J. Estes was engaged in cleaning out the boot of the elevator on the morning when he was injured? A. Yes.

"If the drive belt got back into gear while William J. Estes was cleaning the boot, at the time of his injury, is there any evidence to show how it got back? A. Yes.

"If the drive belt was out of gear when William J. Estes entered the basement, state how it got in gear? A. Defective line shaft."

The judgment of the district court is affirmed.