No. 25,902.

BARTON BLAKESLEE, *Appellant,* v. A. W. MORGAN, *Appellee.*

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Consideration—Misrepresentation—Evidence.* Evidence to sustain a defense to a promissory note given for a secondhand motor truck considered, and *held,* to show that the statements of the agent of the plaintiff payee and vendor of the truck, relied on by defendant, pertained to representations of existing facts and not to mere future promises.

2. SALES — *Misrepresentation — Rescission — Return of Property — Evidence.* The facts and circumstances considered, and *held,* to show that an actual and formal return of a truck sold by means of false and fraudulent representations was impracticable; and *held,* also, that the evidence was sufficient to prove such exercise of dominion over the truck by the plaintiff vendor as to justify an inference that the vendee's informal return of it had been impliedly accepted.

3. TRIAL—*Genuineness of Signature—Question for Jury.* The evidence touching the genuineness of defendant's signature to an alleged written contract covering the sale of the truck considered, and *held,* to present a question for a jury whose specific finding thereon an appellate court cannot disturb.

4. APPEAL AND ERROR—*Prejudicial Error.* Minor errors urged by appellant considered, and *held,* insufficient to disturb the judgment.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed May 9, 1925. Affirmed.

*W. N. Banks, O. L. O'Brien,* and *Walter L. McVey,* all of Independence, for the appellant.

*E. D. Mikesell,* and *A. A. Nattier,* both of Fredonia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action for a balance of $1,000 due on defendant's promissory note which the latter had given for a secondhand motor truck.

The defense was no consideration for the note, misrepresentation as to the condition of the truck, that defendant had returned the truck, and that plaintiff had accepted it.

Plaintiff replied alleging that the truck had been sold to defendant pursuant to a written contract, signed by defendant and plaintiff, in which it was stipulated:

"No verbal promises, understandings or agreements shall be binding or recognized in any way. . . .

"All used goods are sold as is and no guarantee is made regarding same except as stated in writing on face of this order."

On this joinder of issues defendant assumed the burden and his evidence tended to show that he was engaged in the distribution of oil in truck loads in the community around Neodesha; that plaintiff dealt in motor trucks at Independence, and for some time also conducted an auto supply house at Neodesha; that in February, 1919, defendant inquired of plaintiff if he had a good secondhand truck for sale. Plaintiff said: "I have a two-ton truck sitting there that we are starting to overhaul. We are going to put in new blocks and new pistons and overhaul it, and put in new bearings out and out. It will be just as good for service as a new truck when we get it overhauled."

Defendant testified:

"I asked him what he would take for that truck when he had put it in that condition. He said $1,350 to put the new tires on all around and overhaul it thoroughly and make it [so] that it would go out and do practically the work of a new truck. And I says, 'How soon can you have that done, Mr. Blakeslee?" And he says: '. . . I can't say exactly. We ought to get it ready in a short time.' And I says: 'If you will do that I will take the truck under those conditions.' . . . Saw it standing on the floor there. Had the head off of it, was putting a block on. They were working on that part of it. Anyway he said he was putting on a new block. They were overhauling it."

Later, about May 9, 1919, one Newman, agent of plaintiff, called on defendant and told him the truck was nearly ready, that it would be ready in a few days, and proposed to reduce the price to $1,155 if defendant would take the truck without new tires. Newman said: "You might as well get the use—wear of those old tires. The tires are a little hard to get [just] now." Accordingly the bargain was closed; defendant paid $55 by check and gave the note involved in this action. The note was to be paid in monthly installments of $100 each. About July 2, 1919, defendant came to Independence for the truck. He was told it was not quite finished. He inquired what was wanting, and was told the brakes were not fixed, that a small shaft that worked the brakes had not been put in, but that the shaft was on hand, and if defendant would put that in himself he could take the truck. He was told: "Outside of that it is all finished." Defendant replied: "If that is all there is to do we can do it." So he took the truck away. Next day it broke down with a load of oil. Within the next few weeks, the truck repeatedly broke down, its various parts disclosing one defect after another. Defendant went to considerable repeated expenses to render it serviceable, but eventually concluded that none of the repairs represented by plaintiff had been made on the truck, and except for one payment

of $100 on the note which he made on July 12, defendant refused to recognize any further liability. It was impracticable to return the truck to Independence under its own power and locomotion, so it was left out of doors partly dismantled in Neodesha near defendant's place of business, and at some distance from plaintiff's place of business in the same town.

It was fairly well established by defendant's evidence that the truck was worthless, and that there was a practically complete failure of consideration. It was also established satisfactorily that the truck which he bargained for was to be a thoroughly repaired and serviceable truck. It was much less clearly established that defendant's signature to the contract of purchase was not genuine but a forgery.

The verdict was in favor of defendant and the jury answered a special question:

"Q. Do you find that the defendant A. W. Morgan signed the written instrument, dated May 9, 1919, and marked Exhibit 'D'? A. No."

Judgment was entered accordingly, and plaintiff appeals, contending, first, that his demurrer to defendant's evidence should have been sustained—on the theory that the fraudulent representations were not proved. It is argued that the statements of plaintiff, in February, as to what he intended to do to the truck in the matter of repairs, were not representations of fact but mere future promises. But defendant did not buy on the strength of those statements nor at the time they were made to him. He bought several weeks later, in May, when assured by Newman that the repairs mentioned in February were practically completed, and in reliance on that misrepresentation made to him by Newman. Even Newman himself testified: "As I understood it the truck was practically ready for delivery at that time." Moreover, plaintiff really never denied that he was to put the truck in a good and serviceable condition. His witnesses testified that all the promised repairs except the installation of a brake rod were actually made before the truck was delivered to defendant.

It is next argued that defendant cannot avoid liability since he failed to return the truck. The principle contended for is correct, and counsel for appellant pushed it for all it was worth in this case. But there was some evidence—enough to make the point one for a jury to decide—that there was a sort of return of the truck and a tacit or implied acceptance of it. That evidence was to this effect:

Blakeslee v. Morgan.

When plaintiff called on defendant to receive the second install-
ment on the note, defendant and his employees were engaged in one
of their many attempts to correct the defects in the truck.   De-
fendant testified:

"I told him that was his truck, to take it and fix it, and fix it in shape I
could use it and I would pay him and I wouldn't pay any more until he did.

"Q. Why didn't you take it to his place of business when you made the de-
cision you wouldn't have anything more to do with it and return it to him?
A. It wasn't in condition to take to his place of business. . . . I fully in-
tended up until I quit paying to keep the truck and pay for it but these break-
ages—I wouldn't have cared so much for one bearing, twenty dollars, or two or
three, but when it came on getting so heavy and got no service out of the truck
I seen it would put me in the hole to try to operate it and I said I would have
to quit. . . . We probably used it more or less for a month to six weeks at
the most."

It was also shown in evidence that afterwards, under authority of
the man in charge of plaintiff's business establishment in Neodesha,
various persons had taken parts of the truck for use to repair other
trucks.  A witness testified that he had been sent "by the fellow run-
ning the place—the manager of the place—to go to the old Morgan
truck on Eleventh street to get a bearing." He further testified:

"Q. Do you know if Mr. Blakeslee or any of his men had taken any repairs
off the truck, or anybody authorized did?   A. Not at that time, but later on
they did.

"Q. Do you know who did it?   A. It was three or four different parties,
John Nye, Bert McCoy and Hugh Phillips."

From these facts the jury could justly conclude that there had
been such tender of return of the property as was practicable under
the circumstances, and that the subsequent exercise of dominion
over the truck, sending customers to the truck to get parts suitable
to repair other trucks, was substantial evidence of an implied ac-
ceptance of its surrender to the plaintiff vendor.

It is urgently contended that the evidence of the genuiness of de-
fendant's signature to the contract of purchase and sale was so
overwhelming that defendant's denial thereof was simply a fraud.
That was a good line of talk before the jury.   That might be a
proper matter to lay before the county attorney for his considera-
tion touching the propriety of a prosecution for perjury.   But it
serves no purpose in this appeal.   The defendant testified that he did
not sign the contract; that the name on the contract was not his sig-
nature; that he always put a dot between the "A" and the "W" of
his initials and after the "M" in Morgan, and many of his checks

were introduced in an effort to prove that fact, and the dots were wanting in the questioned signature; and one of the four experts who testified that the signature to the contract was that of defendant admitted in cross-examination that there was some difference between defendant's unquestioned signatures and the one in dispute.

"Q. Do you see any difference in them? A. Well, yes, just a little."

Another expert testified no stronger than to say:

"That is Mr. Morgan's signature, I think."

It seems almost superfluous to remark that the question whether defendant's signature to the contract was genuine or spurious was a jury question and even if this court was as thoroughly convinced of its genuineness as appellant's counsel affect to be, the functions of the jury could not be usurped on that account. (*Perkins v. Accident Association,* 96 Kan. 553, 555, 152 Pac. 786; *Murray v. Electric Co.,* 99 Kan. 507, 513, 162 Pac. 1145.) In *Pittman Co. v. Hayes,* 98 Kan. 273, 277, 157 Pac. 1193, where the veracity of a prevailing defendant had been vigorously challenged, this court pointed out how impracticable it would be for an appellate court to decide who was lying and who was telling the truth. It was there said:

"We discuss these matters bluntly, and with no purpose of reflecting on either party, but only to point out how impossible it is for an appellate court, which must gather its facts from the printed page, to substitute its judgment for that of the district court which gathers its facts from the lips of living witnesses. And thus it is that month by month and year by year, in this court and in other courts of appeal, the elementary rule has to be restated that the decision of the trial court on matters of fact based upon substantial though conflicting testimony cannot be disturbed." (See, also, *Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057.)

Appellant finds some fault with the instructions and makes some complaint because the trial court refused to give others. These have been scrutinized carefully, but no error is apparent therein, nor is anything urged in this connection which requires discussion.

Yet another complaint is urged because the trial court permitted evidence to be introduced touching defendant's reputation for carrying out his agreements. If this evidence was incompetent, which we do not decide, it was of insufficient consequence to amount to prejudicial error.

It is finally urged that the trial court committed error in an observation terminating the examination of a witness, Bailey, who had testified that defendant had always carried out his agreements with the witness satisfactorily. The trial court said:

"I don't think this amounts to very much either way. Mr. Bailey is a fine man all right, but that is enough on that point."

Neither in this incident nor elsewhere in this record can anything approaching reversible error be discerned; and the judgment is therefore affirmed.