No. 27,413.

THE RAFTER FARM MORTGAGE COMPANY, *Appellee*, v. JAY R. KING et al., *Appellants*.

SYLLABUS BY THE COURT.

MORTGAGES—*Redemption Period—Payment of Less Than One-third of Purchase Price.* In an appeal from a ruling of the trial court fixing a period of six months in which the defendant judgment debtors might redeem lands sold in foreclosure, the record examined and held to contain sufficient evidence to support the trial court's conclusions of fact implied in its judgment—that defendants held title as purchasers, not as trustees; that the mortgage was one given as for purchase money; that defendants had paid less than one-third of the purchase price; and *held,* that defendants were not entitled to eighteen months in which to redeem the property from foreclosure sale.

Appeal from Jackson district court; MARTIN A. BENDER, judge. Opinion filed June 11, 1927. Affirmed.

*Thomas A. Fairchild* and *H. R. Fulton,* both of Holton, for the appellants. *E. D. Woodburn,* of Holton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal presents the question whether the defendants were entitled to six months or eighteen months in which to redeem certain lands sold in mortgage foreclosure proceedings.

It appears that the late John N. King, of Jackson county, who died a few years ago, left an estate of three tracts of land, aggregating 330 acres, heavily encumbered to three separate mortgagees. His heirs were his widow and eight sons and daughters, of whom one was a minor. One of the sons was the defendant Jay R. King.

For their own purposes the widow and all the other heirs conveyed their interest in the landed estate to Jay R. King, and he endeavored to refund the indebtedness. To that end he and his wife executed a first mortgage on the property for $11,200, but that mortgage could not be marketed; and in consequence a first mortgage of $8,500 was executed and sold through the Davis-Wellcome Mortgage Company to the Prudential Insurance Company, and a second mortgage was executed and delivered to the plaintiff, a local corporation.

Default was made in the payment of the second mortgage indebtedness, and it was foreclosed, and a question arose concerning the

Appeal and Error, 4 C. J. pp. 883 n. 33, 884 n. 37.

Rafter Farm Mortgage Co. v. King.

length of time which the judgment debtors should be accorded for redemption. The plaintiff contended that the circumstances under which Jay R. King received a conveyance of the property constituted him a purchaser, and since he had paid less than one-third of the purchase price and the mortgage was in effect a purchase-money mortgage, the proper redemption period would be six months according to the statute. (R. S. 60-3466.)

On behalf of defendants it was argued that Jay R. King and wife were not purchasers of the property; that the transfer of title of the other heirs to Jay R. King was a mere matter of form to facilitate a refunding of the various encumbrances on the property and to · obtain funds to pay up back interest and taxes; and that the beneficial ownership of the property·remained as formerly in the heirs of John N. King, and that Jay R. King held title merely as trustee.

The trial court heard such evidence as the parties chose to submit on this controverted issue of fact, and decreed that the redemption period should be fixed at six months.

Defendants appeal, assigning error on this ruling. They direct our attention to the positive testimony of a witness, Henry Kennedy, husband of one of John N. King's daughters. He testified: ' ·

"The transfer of Rebecca E. King and other heirs was made to Jay King for the simple purpose, that where there were so many heirs, we could not get a loan to any advantage, there were so many to sign up, and we could not get as good a loan, cheaper rate of interest, and it was turned over to Jay King, so we could put all these mortgages in one mortgage and clean up the back mortgages and back interest, and he was to take care of it for us. This 330-acre tract of land is in three separate tracts, and every one of these had a mortgage on it, that aggregated about $7,200; that is, outside the back interest and taxes, Jay King first put a mortgage on there to the Davis-Wellcome Mortgage Company, for $10,000, and it run for about six months, and they furnished him no money on it. They said they had that loan for the sole purpose of selling it. They released the $10,000 mortgage and made a mortgage of $8,500 that went to pay up the back taxes and interest. The $2,700 mortgage to the Rafter Farm Mortgage Company, made two weeks afterwards, was to pay up mortgages and commission. My wife or any of the other heirs never got anything out of either of these mortgages, only the wife of John G. King who didn't sign the deed. . . . There was some minors at the time this transfer was made to Jay King. Rebecca E. King was their guardian, and she conveyed for the minors.

"*Cross-examination:*

"I do not know what reason the guardian gave in her application for the sale of the minors' land. . . . We were going to let him carry this along in this way, this title for some time. I know about him buying implements.

and moving out there. He and his brother farmed it together. A mortgage to the bank on the crop is all the record I have of it. I couldn't say he mortgaged it to Rafter's. They had litigation over that. There was a crop raised by Charles King and Jay King. Jay owned one-half of it. A certain interest belonged to my wife. She did not get in that case. He was handling this for her."

On the other hand, however, a witness who was a member of the plaintiff's firm testified:

"I have personal knowledge of the loan to Jay R. King, involved here, by our firm for $2,700. This is a foreclosure of the $2,700 mortgage subject to an $8,500 of the Prudential Life Insurance Company.

"Q. State whether or not the mortgage which you are foreclosing was a purchase-price mortgage.

"Objected to by defendant as calling for a conclusion.

"The Court: No, that's a statement of fact. Overruled.

"A. It was.

"The purchase price of the land was right around $10,200. Every dollar of the entire purchase price was borrowed by Mr. King. It was evidenced by the two mortgages. One running to the Prudential Insurance Company, and the other to ourselves. Mr. King paid no money whatever on the purchase price."

It was also shown in evidence that the widow, Rebecca King, guardian of Alice, a minor child of John N. King, applied to the probate court for leave to sell the interest of Alice; this permission was granted, the minor's interest in the property sold to Jay R. King for $714.06, cash in hand; and the guardian's report thereon was approved. Other evidential incidents were that at the time Jay R. King executed the plaintiff's mortgage, he also gave a chattel mortgage on his crop as additional security.

Perhaps we have set down the evidence at needless length, but there is nothing else in this case to write about; and we can but reiterate the oft-repeated rule that questions of disputed fact are within the exclusive and conclusive arbitrament of the trial court where, as here, there is some substantial evidence to support its judgment, and regardless of any and all evidence to the contrary which, if believed, would warrant and require a different judgment. (*Bruington v. Wagoner,* 100 Kan. 439, syl. ¶ 1, 164 Pac. 1057; *Blakeslee v. Morgan,* 118 Kan. 486, 490, 235 Pac. 1042.)

The judgment is affirmed.