No. 34,437

Ben L. Jones, *Appellee,* v. H. L. Pohl, *Appellant.*

(98 P. 2d 175)

Opin-
ion filed January 27, 1940.

*Carl E. Ziegler,* of Coffeyville, *Robert C. Foulston, George Siefkin; Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellant.

*A. R. Lamb* and *Clement A. Reed,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for damages for personal injuries sustained by plaintiff and damages to his car resulting from an automobile collision alleged to have been caused by defendant's negligence. The jury answered special questions and returned a verdict for plaintiff for $3,675, on which judgment was rendered. Defendant has appealed.

From the record it appears that about five o'clock the afternoon of October 18, 1935, plaintiff was driving his Ford car south on a state highway (U. S. 169), improved with black-top surface, about twenty-five or thirty feet wide, with a shoulder on each side, level with the surface of the highway, and a ditch twenty-two inches deep on the east and one eight inches deep on the west. It had rained a little and was misty. About half a mile north of the town of Liberty plaintiff's car collided with a Chevrolet car driven by defendant and going north. Both cars were damaged and plaintiff sustained personal injuries.

This action was filed October 16, 1937, and tried in March, 1939. There was a sharp conflict in the testimony as to movements of the cars shortly before and at the time of the collision. On this point plaintiff testified:

"I was driving south on the west side of the road, . . . I discerned a car coming from the south, on the right side of the road. . . . I was maybe three or four blocks from that car when I first saw it. When I was within about two blocks of the car the car started angling from the right side, his right side, over to my side of the road. . . . I saw the car continue to come over onto my side of the road. . . . I was driving . . . between thirty and forty miles an hour, I started to slow my car down. . . . I turned to my left. . . . I turned until I was completely on his side of the road. Q. Then what happened? A. Well, I turned my car, and Mr. Pohl's car was turned right at mine, the right front part of my car contacted the right front part of his car . . . possibly three or four feet from the east side of the highway, when the wreck took place. . . . After the accident, my car was completely off the highway headed southeast into the ditch. Mr. Pohl's car had maybe both of his front wheels off the highway and it was headed northeast toward my car. From looking at the cars, I could tell that the right side of both cars is what came into contact."

### On cross-examination he testified:

"I saw the Pohl car about three or four blocks away. I was driving on the west side of the road and continued to drive there. When the Pohl car was about two blocks away, it started to turn toward me, angling over on my side. I turned to the left and straightened my car out on the east side of the highway. At that time the Pohl car was fifty or seventy-five feet from me. . . . He continued along the west side for a time and then turned his car straight toward me. I presume I was about seventy-five feet away. I turned a little to the left. . . . I imagine I was not over two or three feet from the east edge of the pavement when he hit me. . . . It was the right front of the two automobiles that came together. I am not sure, but I believe the lights on the Pohl car were burning. One of the lights was torn off by the collision. . . . As the car approached, I noticed that it had lights on. . . . It is not true that my car was about the center of the road and hit the left, front fender of the Pohl car. . . . I think the two right fenders were the ones that came in contact. . . . My explanation. . . . was that I was more on the east side of the road than he was. . . . The black top is twenty-five or thirty feet wide, has a shoulder on each side. The ditch on the east side is rather abrupt. On the west side there is hardly any ditch at all. I have driven the road many, many times."

### Mr. Hannah, riding with plaintiff, testified:

"We were going down the highway just about the center of the road. . . . there was a Chevrolet sedan, . . . coming north on the highway. . . . We got rather close and Ben Jones pulled to the right of the highway and at the same time this other car pulled to the left of the highway in front of Ben Jones. . . . After both cars were on the right and left side of the highway, according to the direction they were going, Ben Jones pulled to the left the same time the other car pulled to the right, and they both hit in the center of the highway. . . . It was less than a block between the two cars when I first saw the Pohl car. The cars were about ten feet apart at the time the turn was made. . . After the collision . . . they were both

facing due east . . . parallel . . . Ben's right front fender hit the middle of the Chevrolet. . . . The radiator, the front of the car."

On this point the defendant testified:

"I saw the Jones car coming over the slope, perhaps two thousand feet away. It veered over to the east, then went back over to the west, then back to the east. As it came back to the east the second time, we had our collision. I was driving thirty-five to forty miles an hour. . . . When he first came over on my side of the road, I applied the brakes and when he went over on the west side again, I released the brakes and continued on. At the time of the collision, I had by right front wheel off of the black top and was starting into the ditch on the east side to avoid the collision. The front end of the Jones car, that is about the center of his radiator, crushed into my fender and light on the left side. I had my dimmers on and they were burning at the time. After the collision the right light was still burning. The left light had been crushed back into the engine. . . . As I approached the place of the accident, I did not, at any time, turn to the left where my car went over the center line of the pavement. There was nothing on the highway that forced Mr. Jones to drive on my side of the highway. . . . For a distance of several thousand feet, we were the only cars on the highway. . . . At the time I first saw the Jones car, I was hugging pretty close to the center line. I applied my brakes, slowing down to under thirty miles an hour. . . . The collision did not occur approximately in the center of the highway. When Jones came on my side, it was impossible for me to make a turn to the left because he was coming toward me. . . . I turned my car to the left the moment I seen him coming over on my side, I was working to the outer edge."

The testimony of defendant's wife, who was riding with him, was to the same effect.

Mechanics, called to get defendant's car and who examined it there and at the garage, testified the parking light on the right side was burning, the left light was all crushed in, the left front fender crumpled back, the radiator, shell and core, the front end, the left wheel suspension, the axle equipment, and the frame, were badly damaged on the left side of the front part of the car. The glass in the left front door was broken. The windshield was clean and not broken. The car had not been injured on its right side. No mechanics testified as to what part of plaintiff's car was damaged.

The special questions and answers pertaining to this part of the case are as follows:

"1. Prior to the collision what was the rate of speed of (a) Plaintiff? A. Thirty to thirty-five miles per hour. (b) Defendant? A. Thirty-five to forty miles per hour.

"2. What parts of the two automobiles first came in contact with the other? A. The left-hand side of defendant's Chevrolet and the right side of plaintiff's Ford.

"3. Where, with reference to the center line of the 'blacktop' was the point of impact between the automobiles? A. About four feet east of center.

"4. When the two automobiles approached each other did plaintiff turn to the left across the center line? A. He did.

"5. If you answer question No. 4 'yes,' state when such turn was made; when a collision was imminent. (*a*) How far the plaintiff's automobile went across the center line? A. About four feet. (*b*) The distance separating the two automobiles at that time? A. Ten to fifteen feet. (*c*) The location of defendant's automobile with reference to the center line at that time? A. West of center and headed northeast.

"6. When the two automobiles approached each other, did defendant's automobile turn to the left and cross the center line? A. Yes.

"7. If you have answered the question 6 'yes,' state when such turn was made? A. 150 to 200 feet. (*a*) How far defendant's automobile went across the line? A. Three or four feet. (*b*) The distance separating the two automobiles at that time? A. Thirty to forty feet. (*c*) The location of plaintiff's automobile at that time? A. West of center.

"8. Of what, if any, negligence was plaintiff guilty? A. None.

"9. Of what, if any, negligence was defendant guilty? A. Driving on wrong side of road. . . .

"11. At the time the automobiles were about seventy-five feet apart do you find that the defendant was negligent, (*a*) In driving on the wrong side of the road? A. Yes. (*b*) In driving a car with a dirty windshield? A. No. (*c*) In failing to look ahead and see plaintiff's car? A. Yes."

Defendant moved to set aside many of the answers returned by the jury to the special questions on the grounds they were not sustained by the evidence and were contrary to the evidence. The motion was overruled. Appellant contends this was error. The specific answers appellant contends should have been set aside are: *First,* the last part of the answer to No. 2. Plaintiff testified the right-hand side of the two cars came in contact; defendant testified that the front of plaintiff's car struck the left front corner of his car. Other evidence made it clear defendant was correct as to where his car was struck, and the jury so found; but as to where plaintiff's car was struck there was no testimony except that of plaintiff and defendant. On this conflict the jury found in accord with plaintiff's testimony, the trial court approved the finding, and there is nothing we can do about it. *Second,* the answer to No. 3 is not sustained by any evidence and should have been set aside. Hannah testified the cars collided in the center of the highway. Plaintiff specifically denied that, and both he and defendant testified the collision was at the east edge of the pavement, and this was further confirmed by other evidence. *Third,* the answers to Nos. 4 to 7 are in part on

conflicting testimony as to whether defendant at any time drove west of the center line of the pavement, and are unsupported by any evidence in finding plaintiff drove only four feet east of center line. Plaintiff testified he had his car straightened out on the east side of the pavement, and defendant testified that plaintiff's car struck his when his car was at the east edge of the pavement with the right front wheel on the shoulder. If, as the jury found, defendant's car was as much as three or four feet west of the center of the pavement plaintiff still had eight or ten feet of pavement west of defendant's car on which he could have driven with safety, and there was no reason for plaintiff to drive on the east side of the pavement. at any time. *Fourth,* as to answers to Nos. 8 and 9, it is difficult to see harmony between them and the answers to previous questions. *Fifth,* as to answers to No. 11 (*a*), if defendant was negligent in driving his car so it was three or four feet west of the center of the pavement, when the cars were seventy-five feet apart, that alone was not the cause of the collision; and No. 11 (*c*) was not supported by any evidence and was contrary to the only evidence on. the point.

In answer to question No. 10 the jury itemized the damages allowed. One of the items was medical bills, $500. The parties stipulated that one doctor bill of $40 and one hospital bill of $85 were fair and reasonable, and we understand appellant to concede these should be allowed if plaintiff is entitled to recover at all. Appellant contends there was no competent evidence to support the other items which made up the sum allowed. We concur in that view. From the record it appears plaintiff was in another automobile collision about a month after the one involved here and that he had other ailments, which may not have resulted from injuries sustained in either of the collisions. No physician testified that the additional medical treatment, much of which was two or three years after the collision involved in this case, was occasioned by. the injuries received in that collision. Plaintiff testified he took the treatments and paid or incurred certain expense. This alone was not sufficient. The court admitted this testimony upon the statement of plaintiff's counsel that later it would be connected up with this collision. That was not done.

The grounds of the motion for a new trial included a claim of. erroneous rulings of the court; that the special questions are inconsistent with each other and with the general verdict, which in. whole or in part is contrary to the evidence and given under the

influence of passion and prejudice, and that plaintiff's counsel improperly injected an insurance issue in the trial of the case.

We think it clear the jury did not give fair consideration to the evidence, and that it was error for the court not to sustain substantially all of defendant's motion to strike answers of the jury to special questions, and that a new trial should have been granted.

Appellant suggests an explanation of the jury's conduct because of the following incident: Upon the *voir dire* examination of the jurors plaintiff's counsel asked all of them the general question "whether or not they knew of any of the officers or agents of the Zurich General Accident and Liability Corporation." Objections were made to the question. The court observed it was a pretty dangerous question; there was some colloquy between court and counsel for plaintiff as to the propriety of the question, and whether it was asked in good faith; whereupon the court addressed the jury:

"Gentlemen of the jury, you are instructed not to consider the question. That company has not been sued by this plaintiff and so far as we know, or the record shows, has no interest in this lawsuit."

Ordinarily this disposition of the matter by the trial court would be held to cure the misconduct of propounding the question on the theory the jury is presumed to perform its duty and follow the court's instructions. Appellant concedes this, but argues that presumption cannot be indulged in here, since obviously the jury did not follow the evidence. Appellee's counsel argues that an inquiry about insurance in a case of this character is not improper if made in good faith, and ordinarily the ruling of the trial court on the good faith of the inquiry is binding on this court. This reasoning is not helpful to appellee. The ruling of the trial court must be construed as based upon the view that the question was not propounded in good faith. We approve of that view of the trial court and hold that in a case such as this, where the insurance company is not a party and no issue on that question is raised by the pleadings, the propounding of such a question to the jury is in itself an indication of a lack of good faith.

Appellee's notice of cross-appeal was served too late (G. S. 1937 Supp. 60-3314) and cannot be considered.

From what has been said it necessarily follows that the judgment of the court below must be reversed with directions to sustain the motion for a new trial. It is so ordered.

THIELE, J., not participating.